IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**DAMON LEWIS,**

        **Plaintiff,**

**v.**                                                     **CIV 09-0136 KBM/WDS**

**MICHAEL SANDOVAL,** *et al.***,**

        **Defendants.**


## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment and Plaintiff's Motion to Strike. *Docs. 58, 77.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. Having carefully reviewed the parties submissions and relevant authorities, I find that Plaintiff's Motion to Strike should be denied and Defendants' Motion for Summary Judgment on the basis of qualified immunity should be granted.

### SUMMARY JUDGMENT STANDARD WHEN
### THE QUALIFIED IMMUNITY DEFENSE HAS BEEN RAISED

The Federal Rules of Civil Procedure provide that summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting FED. R. CIV. P. 56(c)). However, the affirmative defense of qualified immunity protects "government officials performing discretionary functions . . . from

liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Thus, motions for summary judgment when qualified immunity is raised are reviewed differently than other summary judgment motions because of the underlying purposes of qualified immunity.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Nelson v. McMullen*, 207 F.3d 1202, 1205-06 (10th Cir. 2000)).

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion.  The plaintiff must demonstrate that on the facts alleged the defendant violated his or her constitutional or statutory rights.  In addition, the plaintiff must show that the right was clearly established at the time of the alleged unlawful activity.

*Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009) (quoting *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 815-16, 818 (2009)).  If the plaintiff does not satisfy this heavy two-part burden, the defendant is entitled to qualified immunity.

> In determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007). . . . However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'"

*Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the

alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Medina*, 252 F.3d at 1128 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

## MATERIAL FACTS

This lawsuit arises out of an incident that occurred on April 21, 2007, between Plaintiff Damon Lewis and Defendant Officer Michael Sandoval.  The Complaint was originally filed in this Court on February 11, 2009.  *See Doc. 1*.  Plaintiff sought to amend his complaint on September 8, 2009, and again on October 2, 2009.  *See Docs. 39-2, 43-2*.  On October 31, 2009, I entered an order granting in part and denying in part plaintiff's motion to amend.  *See Doc. 57*.  I specifically ordered that "Plaintiff shall file a First Amended Complaint consistent with this ruling immediately."  *Id.*  To date, no such amended complaint has been filed.

Now before the Court is Defendants' Motion for Summary Judgment wherein, consistent with my October 31, 2009 ruling, the Defendants give Plaintiff the benefit of addressing all of the counts he included in his Proposed Amended Complaint even though he failed to file it as ordered.  In ruling on Defendants' Motion for Summary Judgment, I will do the same.

On the morning of April 21, 2007, Plaintiff who was on his way home from work, was driving on Main Street in Los Lunas, New Mexico.  On that same morning, Officer Sandoval was running stationary radar from the parking lot of Los Lunas Middle School, parallel to Main Street.  Officer Sandoval was in his marked patrol unit and wearing full uniform.  Officer Sandoval testified that, prior to beginning his patrol, he checked the calibration of his radar unit to insure that it was functioning properly.  Officer Sandoval's radar unit indicated that Plaintiff was driving 49 miles per hour in a 30 mile per hour zone.  Officer Sandoval contends that he activated his overhead lights and pulled onto Main Street to stop Plaintiff for speeding.  Plaintiff

did not stop and continued driving.

Officer Sandoval testified that upon realizing that Plaintiff was not going to stop, he activated his siren. Plaintiff still did not stop. Officer Sandoval then radioed dispatch to notify them that he was pursuing the vehicle. Indeed, the dispatch tape reveals Officer Sandoval's report that he was in pursuit of Plaintiff's vehicle. And the patrol car's siren can be heard on the recording. *See Doc. 82 (Defendants' Ex. I* at marker SKJSM8101966529). The pursuit continued for several blocks through Plaintiff's neighborhood and ended in Plaintiff's driveway. Plaintiff contends that he never noticed a police officer behind him until he was pulling into his driveway. He testified that upon pulling into his driveway he looked in his review mirror and saw a police officer merging onto Cypress with his lights on.

Plaintiff then attempted to exit his vehicle when he heard Officer Sandoval order him to get back in his vehicle until backup arrived. Once backup arrived, Officer Sandoval ordered Plaintiff to get out of his vehicle and to raise his hands and walk toward him. Officer Sandoval handcuffed Plaintiff and then asked him if he knew why he was being arrested. He informed Plaintiff that he had "clocked him" doing 49 miles per hour on Main Street and that Plaintiff had tried to "elude" him. During questioning, Plaintiff denied any attempt to elude the officer but told the officer that he was "just going fast" and trying to get home. Plaintiff was placed in the patrol unit and driven to the police station. He remained silent during the ride to the police station.

Only after arriving at the police station and getting out of the patrol unit, did Plaintiff ask Officer Sandoval to loosen his handcuffs. Within approximately ten minutes of Plaintiff's request, Officer Sandoval loosened the handcuffs. Another officer then removed Plaintiff's handcuffs to fingerprint him and loosely re-handcuffed Plaintiff with his hands in front of his

body.  Plaintiff was charged with eluding an officer in violation of N.M. STAT. ANN. § 30-22-1.1 and operating a motor vehicle without liability insurance in violation of N.M. STAT. ANN. § 66-5-205.  These charges were later dismissed.

In his deposition testimony during discovery, Plaintiff testified that he never exceeded the speed limit.  *See Doc. 58-3* at 14 *(Defendants' Ex. D).*  He further stated that he never looked at the speedometer but instead was driving according to "feel."  *Id.*  Plaintiff agreed that he told Officer Sandoval that he was "just going fast."  *Id.* at 13.  He further testified that at the time of his arrest he had been working twelve-hour shifts, six days a week, for four months straight and that he was needing to get sleep for the next day.  *Id.*  As to the charge of eluding an officer, he again denied that he was aware that Officer Sandoval was attempting to stop him for speeding.

## ANALYSIS

### Plaintiff's Motion to Strike

Plaintiff argues that certain statements proffered by Defendants are inadmissible and must be stricken because "evidence obtained after-the-fact simply cannot act as the basis for the determination of probable cause."  *Doc. 77* at 1-2.  First, Plaintiff seeks to strike his own statement that he was "going fast."  Second, he seeks to preclude Officer Andrew Garcia's declaration that he also observed Plaintiff traveling about 50 miles per hour on that occasion and that Defendant Sandoval had probable cause to arrest Plaintiff for careless or reckless driving.  Plaintiff is mistaken in his interpretation of Defendants' use of the statements.

Defendants are not claiming that the after-arrest statements made by Lewis and Garcia were Officer Sandoval's basis for his determination of probable cause to arrest Plaintiff.  Rather, Defendants are using the statements to show Plaintiff's state-of-mind, that Plaintiff was aware that he was speeding and therefore had a motive to elude the police officer.  Moreover, I am not

5

persuaded that Plaintiff's statement, which is admissible under Federal Rule of Evidence 801(d)(2) as an admission by party-opponent, is unduly prejudicial under Federal Rule of Evidence 403.  Again, it is probative of a motive to elude the officer.

Indeed, the statements corroborate Officer Sandoval's testimony that his observations supported probable cause to attempt to stop Plaintiff's vehicle and directly contradict Plaintiff's assertion that he was not speeding.  Finally, when an officer personally observes a violation, there is no requirement that prior to arrest the officer question the suspect or further investigate, as Plaintiff suggests.  Accordingly, Plaintiff's Motion to Strike is denied.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: QUALIFIED IMMUNITY RAISED

Plaintiff's Complaint is based on 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, N.M. STAT. ANN. §§ 41-4-1, *et seq.*, and alleges the following violations: (1) unreasonable search, (2) unreasonable seizure, (3) excessive force, (4) malicious prosecution, (5) malicious abuse of process, (6) false arrest, (7) municipal liability: custom and policy, and (8) municipal liability: failure to train and supervise.  It has been Plaintiff's position from the outset that Officer Sandoval lacked probable cause.  Probable cause is an essential element in almost all of Plaintiff's claims.  As such, the Court will first address the issue of probable cause.

### Probable Cause Analysis

"A warrantless arrest is permissible when an officer 'has probable cause to believe that a person committed a crime.'"  *Cortez*, 478 F.3d at 1115 (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)).  "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'"  *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)

(quoting *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001)).  Because the determination of probable cause is an objective standard, the subjective belief of a police officer making an arrest is not dispositive.  *See Valenzuela*, 365 F.3d at 896.  "[T]he primary concern is 'whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer.'"  *Id.* (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)).

On Counts 1 and 2, Plaintiff specifically alleges that Officer Sandoval violated his Fourth Amendment right to be free from unreasonable searches and seizures because he did not have a warrant or probable cause.  A lack of probable cause is not only an essential element of Counts 1 and 2, but also Counts 4, 5, and 6.  *See Jackson v. New Mexico Public Defender's Office*, 2010 WL 227569, at *5 (10th Cir. 2010) (citing *State v. Johnson*, 930 P.2d 1148, 1153 (N.M. 1996)); *see also Titus v. Ahlm*, 297 F. App'x 796, 798 (10th Cir. 2008) ("lack of probable cause is an essential element of a claim for malicious abuse of process in New Mexico").  Thus, to survive summary judgment on these counts, Plaintiff must show that Officer Sandoval lacked probable cause to arrest him for the crime of eluding an officer.

If a police officer "clocks" an automobile on his radar going 49 miles per hour in a 30 mile per hour zone and proceeds to stop the automobile, the stop complies with the Fourth Amendment because the stop is made by the police officer upon personal observation of a traffic violation.  *See Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Ryan*, 128 F. Supp. 2d 232, 236 (E.D. Pa. 2000) (citing *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000) ("Automobile stops are reasonable where a police officer observes a violation of state traffic regulations.")).  Likewise, if a police officer gives a visual or audible signal attempting to bring a vehicle to a stop and the vehicle does not stop, "[t]his behavior violate[s]

N.M. Stat. Ann. § 30-22-1 . . . and constitute[s] probable cause to support the stop, the citation, and the arrest." *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that even a minor violation is sufficient cause to justify an arrest)).

Although Plaintiff testified that he was not speeding by the "feel" of his truck, he has failed to come forth with evidence that Officer Sandoval's radar did not indicate that Plaintiff was exceeding the speed limit. Moreover, Plaintiff's contention that he was unaware of the police officer does not rebut Officer Sandoval's testimony, or the dispatch recording, that establishes that he attempted to pull Plaintiff over with his lights and siren and that Plaintiff failed to respond. *See Nelson v. Riddle*, 217 F. App'x 456, 461 (6th Cir. 2007). Given these uncontroverted circumstances, a reasonable police officer would have cause to believe that Plaintiff was attempting to elude him.

The basis for the unreasonable search claim set forth in Count 1 is less than clear. If Plaintiff's only argument is that Officer Sandoval lacked probable cause, this claim fails. If it instead relates to Officer Sandoval's entry into Plaintiff's vehicle and the subsequent search of his wallet and glove compartment, any violation of law was not clearly established at the time of Plaintiff's arrest. *See Arizona v. Gant*, 129 S. Ct. 1710, 1712 (2009) (citing *New York v. Belton*, 453 U.S. 454 (1981) (Prior to the decision in *Gant*, police officers could "search the passenger compartment of a vehicle and any containers therein as a contemporaneous incident of a recent occupant's lawful arrest.")); *see also United States v. Kelly*, 267 F. Supp. 2d 5, 13 (D.D.C. 2003) ("[C]ourts in several jurisdictions have held it reasonable for a police officer to reach into the glove compartment of a car for the registration if "the operator of the motor vehicle is unable to produce proof of registration"). Thus, Defendants are entitled to qualified immunity on

Plaintiff's claims of unreasonable search and seizure, malicious abuse of prosecution, malicious abuse of process, and false arrest.

## Excessive Force

Plaintiff's excessive force claim must be analyzed under the Fourth Amendment and its reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). Again, "the 'reasonableness' inquiry in an excessive force claim is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397 (citations omitted). "The inquiry focuses not on the officers' particular motivations, nor on the arrestee's subjective perception of the intrusion." *Fisher*, 584 F.3d at 894.

The Tenth Circuit has explained that in a handcuffing case, "to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Id.* (quoting *Cortez*, 478 F.3d at 1129 n.25). Furthermore, in *Graham*, the Supreme Court stated that the proper application of the test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In *Muehler v. Mena*, 544 U.S. 93, 99 (2005), the Supreme Court applied the factors set forth in *Graham* and recognized that "[t]he officers' use of force in the form of handcuffs to effectuate [a] detention . . . was reasonable because the governmental interests outweigh the

9

marginal intrusion." The Court noted, however, that the use of handcuffs can become unreasonable if other factors "affect the balance of interests under *Graham*." *Id.* at 100.

Applying the law to the facts of this case, Officer Sandoval's decision to use handcuffs was objectively reasonable. First, although speeding may not be a particularly severe crime, Plaintiff was in fact arrested for eluding a police officer which is a far more serious crime. Second, as occurred here, eluding a police officer is particularly severe when it poses an immediate threat to the safety of others. In his declaration, Andrew Garcia stated that when he saw Plaintiff speeding, he also observed people in the neighborhood out of their homes, in their yards, and in the vicinity of the street. He further declared that Plaintiff was driving carelessly and disregarding the safety of the neighborhood residents.

Finally, the offense of eluding a police officer is the very act of attempting to resist arrest or evading arrest by flight. And although at the time of arrest Plaintiff did not attempt to flee, Officer Sandoval's decision to handcuff Plaintiff was clearly reasonable and within his authority. *See Graham*, 490 U.S. at 396 ("The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it."); *see also Cortez*, 478 F.3d at 1128 (citing *Atwater*, 532 U.S. at 354-55 (noting that a normal lawful custodial arrest where one is handcuffed, placed in a patrol car, and taken to the police station may be inconvenient and embarrassing, but not violative of the Fourth Amendment)).

The issue remains, however, as to whether the manner in which Officer Sandoval handcuffed Plaintiff was unreasonable. With regards to the force used when applying the handcuffs, Plaintiff alleges that Officer Sandoval forcibly pulled his hands together and placed only one set of handcuffs on overly tight, despite the fact that his large build prevents him from comfortably placing both hands behind his back. Plaintiff further alleges that upon arriving at

the police station he requested that the handcuffs be loosened and that within approximately ten minutes of his request, Officer Sandoval loosened the handcuffs.

There is no evidence that Officer Sandoval knew that Plaintiff could not comfortably place both hands behind his back. The fact that Officer Sandoval handcuffed Plaintiff with one set of handcuffs is not unreasonable or an excessive use of force. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1352-53 (11th Cir. 2002) (concluding officer did not use excessive force when he handcuffed plaintiff's arms behind his back, despite the fact that handcuffing led to eventual amputation of one arm, because officer did not know of plaintiff's preexisting injury); *see also Braun v. Baldwin*, 346 F.3d 761, 763 (7th Cir. 2003) ("Braun also claims to have been subjected to excessive force in the course of his arrest, mainly because the handcuffs were fastened too tightly . . . but as there is no indication that his arrest was effected in an unusual or improper manner, the excessive-force claim has no possible merit.").

Whether the failure to adjust handcuffs during an arrest constitutes excessive force is yet another issue. "In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez*, 478 F.3d at 1129 (citations omitted).

Plaintiff does not present any evidence supporting his position that Officer Sandoval failed to adjust his handcuffs in a timely manner. In his deposition Plaintiff stated that: (1) at the time he was handcuffed he never mentioned to the officer that he was experiencing any discomfort or that the handcuffs were too tight; (2) he did not converse with Officer Sandoval while en route to the police station; (3) it was only after they arrived at the police station that he complained of pain and asked Officer Sandoval to loosen the handcuffs; (4) Officer Sandoval

11

said he would when he got back from the restroom; and (5) within about ten minutes of the request, Officer Sandoval loosened the handcuffs.  The fact that Officer Sandoval went to the restroom before loosening Plaintiff's handcuffs is not unreasonable, especially considering this was the first time Plaintiff complained of the handcuffs being too tight.

Thus, even when viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no evidence suggesting that Officer Sandoval used greater force than reasonably necessary in effectuating Plaintiff's arrest.  Defendants are therefore entitled to qualified immunity on Plaintiff's excessive force claim.

### Municipal Liability: Custom and Policy & Failure to Train and Supervise

Plaintiff's last two claims are against the Village of Los Lunas for maintaining a policy of permitting its officers to violate Plaintiff's constitutional rights, and failing to properly train and supervise its officers regarding their public interaction, investigations, detentions, and arrests.  "A plaintiff suing a municipality under § 1983 for the actions of one of its officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (citing *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998)).  Because the Court has determined that Officer Sandoval did not commit a constitutional violation against Plaintiff, the Village of Los Lunas cannot be liable under § 1983.  *See id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike *(Doc. 77)* is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment *(Doc. 58)* is **granted**.

_____
UNITED STATES MAGISTRATE JUDGE